```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION

ADINAH TORRES,

         Plaintiff,
v.                                    Case No. 8:14-cv-1021-T-33TBM

SCHOOL DISTRICT OF MANATEE
COUNTY, FLORIDA,

         Defendant.
_____/
```

**ORDER**

This cause is before the Court pursuant to Defendant School District of Manatee County, Florida's Motion to Dismiss Count I and Count III of the Plaintiff's Amended Complaint (Doc. # 24), which was filed on August 15, 2014. Plaintiff Adinah Torres filed a Response in Opposition to the Motion to Dismiss (Doc. # 26) on August 19, 2014.  For the reasons that follow, the Motion to Dismiss is granted.

**I.   Background**

In November of 2010, Torres began working as a full-time parent liaison for Defendant School District of Manatee County, Florida at Manatee High School (MHS). (Doc. # 19 at ¶ 6). Her direct supervisor was Assistant Principal Gregg Faller, but Principal Robert Gagnon also had disciplinary authority over her. (Id. at ¶¶ 6, 18).

On February 14, 2011, Roderick Frazier, who was employed by the School District at MHS as a parent liaison and assistant football coach, allegedly began making unwanted sexual advances towards Torres. (Id. at ¶¶ 1, 7). Frazier told Torres, "If you don't have a Valentine, I'll be your Valentine" and would play the R. Kelly song "Bump and Grind" when Torres would return to her classroom after her lunch break. (Id. at ¶¶ 7, 8). These overtures made Torres uncomfortable. (Id. at ¶ 7).

In March of 2011, Torres received mandatory computer training from Frazier in his office. (Id. at ¶ 9). During a training session, Frazier sat on top of the desk and "slid his foot up the back of [Torres's] calf to the crease of the inside of her knee." (Id.). Torres was upset by this and quickly moved away. (Id. at ¶¶ 9-10). Torres reported the incident to Faller. (Id. at ¶ 11). In response, Faller purportedly stated, "I can't have any problems between you guys. Just remember if you need help with one of the students, you want someone to come and assist you. You got that? So you got this?" (Id.). Torres replied that she understood. (Id.).

Also, Torres alleges that she reported to Faller that Frazier sexually harassed female students as follows:

> Frazier routinely called female students out of class and into his office for meetings which had no purpose other than for Frazier to engage in

2

>unwanted sexual advances and exercise his power over female students. Other faculty and staff made reports that Frazier engaged in sexual improprieties with students. Frazier had a reputation among teachers and students for using his power and privileges in order to seek attention and flattery from female students to gratify his sexual desires. Frazier made sexual advances toward one or more students, made unwanted sexual contact with students, and collected nude photographs of very young females on his work-issued computer.

(Id.).

According to the Amended Complaint, Faller did not take any of Torres's complaints seriously and never took effective action. (Id.).[1] However, after complaining to Faller about Frazier, Torres's duty post was changed from the discipline department to the back of the school — an inconvenient location that made it difficult for Torres to take lunch or restroom breaks. (Id. at ¶¶ 14-15). Faller and other employees in the discipline office would not take Torres's phone calls for relief when she needed a restroom break. (Id.).

When Torres's calls went unanswered, Torres would leave her post in In School Suspension (ISS) to use the restroom. (Id. at ¶ 17). Subsequently, Torres was ordered to never leave the room unattended, which revealed that Torres was being monitored on camera and intentionally denied breaks. (Id.).

---

[1] "Recently, on June 18, 2014, a trial court in Manatee County, Florida, found Faller guilty of knowing of and failing to report child abuse committed by Frazier." (Id. at ¶ 6).

3

Torres alleges she received similar reprimands from Faller "in retaliation for her complaints about Frazier" on most days. (Id. at ¶ 16).

Torres applied for vacant teaching positions at MHS, but was denied two positions, purportedly based on her complaints against Frazier. (Id. at ¶ 18). Principal Gagnon was overheard stating that Torres would not be hired for a vacant English teaching position. (Id.). Likewise, the head of the English department told Torres that the administration would not allow her to hire Torres. (Id.).

Meanwhile, Faller continued to retaliate against Torres. (Id. at ¶ 19). He informed Torres that she did not have a right to a lunch period. (Id.). Torres called Human Resources (HR), which informed Faller that Torres had a right to a lunch period and two 15-minute breaks. (Id.). Faller reprimanded Torres for calling HR, and he stated that he would not give Torres the two 15-minute breaks. (Id.). In August of 2011, Torres was given a less desirable position that would require her to stay in ISS all day with only a lunch break. (Id. at ¶ 20). Additionally, her office was taken away. (Id.).

In October of 2011, Gagnon, through Faller, issued Torres a reprimand, which Torres refused to sign. (Id. at ¶ 21). Torres met with Gagnon to discuss the reprimand and reported that she was being treated differently from Frazier,

4

who was guilty of "far more inappropriate conduct." (Id.). Following this meeting with Gagnon, Faller threatened Torres with the loss of her position and stated, "You won't be hired anywhere in the district." (Id. at ¶ 22). Faller continued to reprimand Torres daily and deny her breaks, allegedly at the behest of Gagnon and Frazier. (Id. at ¶ 23).

Gagnon moved to the district office as Assistant Superintendent of Curriculum in January of 2012. (Id. at ¶ 24). In July of 2012, Tina Barrios, Director of Technology Support, hired Torres as an Application Support Manager at the School District's headquarters. (Id. at ¶ 25). Torres was told that Gagnon was angry at Barrios because of the hiring decision. (Id. at ¶ 26). Later, in October of 2012, Gagnon removed Barrios from her position, supposedly without cause. (Id. at ¶ 28).

In February of 2013, Torres learned that Bradenton Police Department (BPD) detectives wanted to speak with her about Frazier. (Id. at ¶ 32). Torres informed BPD about the incident involving Frazier. (Id.). Soon after, in March of 2013, Torres was denied mandatory training and another employee received the training instead. (Id. at ¶ 33). Later, in May of 2013, Torres was notified that her employment would not be renewed and would terminate on June 30, 2013. (Id. at ¶ 35). Initially, the interim Director of Technology Support,

5

Ernie Paradis, told Torres the decision was based on her performance; however, no performance review was ever conducted and Torres's HR file contained no complaints. (Id.). Later, Paradis stated that Torres's nonrenewal was the result of cutbacks. (Id.).

Following the notice of her non-renewal, Torres met with the State Attorney's office and provided information to assist in the prosecution of Frazier and other officials, including Gagnon. (Id. at ¶ 36). In June of 2013, Gagnon learned about this meeting and subjected Torres to "a litany of false allegations." (Id. at ¶ 38). Ultimately, Torres's employment was terminated two weeks before the expiration of her employment contract. (Id.).

## II. Procedural History

Torres filed her one-count Complaint in this Court on May 2, 2014, alleging retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et. seq. (Doc. # 1). The School District filed a Motion to Dismiss for failure to state a claim on July 10, 2014. (Doc. # 13). Torres filed a Response in Opposition to the Motion to Dismiss on July 18, 2014. (Doc. # 15). The Court set oral argument on the Motion to Dismiss for July 30, 2014. (Doc. # 18). On July 29, 2014, Torres filed an Amended Complaint (Doc. # 19) alleging retaliation under Title IX "Complaints of Sexual

Harassment of Herself" (count one), retaliation under Title IX "Complaints of Sexual Harassment of Students" (count two), and retaliation under Title IX "Complaints of Sexual Harassment of Students and Teachers" (count three).

Even though the School District's original Motion to Dismiss was mooted by the timely filing of the Amended Complaint, the Court held the previously scheduled oral argument on July 30, 2014. At the hearing, the Court asked the parties to address the discrete issue of whether Title IX is preempted by Title VII to the extent Torres seeks redress for retaliation stemming from her complaint that she was sexually harassed by Frazier.

After the hearing, on August 15, 2014, the School District filed a Motion to Dismiss as to counts one and three of the Amended Complaint (Doc. # 24) and filed an Answer as to count two of the Amended Complaint. (Doc. # 25). Torres responded to the Motion to Dismiss on August 19, 2014. (Doc. # 26).

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable

inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, in Twombly, the Supreme Court cautioned:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. Analysis

### A. Title IX and Title VII

Title IX, 20 U.S.C. § 1681, states as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681.

Title IX prohibits both sex discrimination and retaliation against an individual who complains about sex-based discrimination perpetrated by an educational

8

institution receiving federal funds. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005). In North Haven Board of Education v. Bell, 456 U.S. 512 (1982), the Supreme Court held that the plain meaning of Title IX includes employees or teachers, as well as students, at schools receiving federal funds:

> [Title IX's] broad directive that "no person" may be discriminated against on the basis of gender appears, on its face, to include employees as well as students. Under that provision, employees, like other "persons," may not be "excluded from participation in," "denied the benefits of," or "subjected to discrimination under" education programs receiving federal financial support.
> . . . .
> Because [Title IX] neither expressly nor impliedly excludes employees from its reach, we should interpret the provision as covering and protecting these "persons" unless other considerations counsel to the contrary. After all, Congress easily could have substituted "student" or "beneficiary" for the word "person" if it had wished to restrict the scope of [Title IX].

Id. at 520-21.

There is no question that Title IX prohibits employment discrimination: "employment discrimination comes within the prohibition of Title IX." Id. at 530.  The question that the Court is called upon to address is whether teachers, such as Torres, have a private right of action for retaliation under Title IX when such teachers complain that they are the victims of sexual harassment.  The Court determines that such a

9

private right of action does not exist under Title IX because it is preempted by Title VII of the Civil Rights Act of 1964.[2]

Title VII of the Civil Rights Act of 1964, as currently codified, states in pertinent part:

> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). "Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." Forehand v. Fla. State Hosp. at Chattahoochee, 89 F.3d 1562, 1567 (11th Cir. 1996). During oral argument, Torres conceded that she is barred from pursuing any Title VII claims because she missed the deadline for filing an EEOC complaint.

**B. Preemption**

Neither the Supreme Court nor the Eleventh Circuit have addressed the issue of whether Title VII preempts Title IX when school employees seek redress for discrimination and

---

[2] Torres's retaliation claims predicated upon her reporting Frazier's sexual harassment of students are not subject to the Motion to Dismiss and are not preempted by Title VII.

10

retaliation unrelated to their students. However, there is a split among the various federal courts on the issue presented. See, e.g., Lakoski v. James, 66 F.3d 751, 758 (5th Cir. 1995)("Title IX prohibits the same employment practices proscribed by Title VII, . . . individuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX either directly or derivatively through § 1983."); Schultz v. Bd. of Trustees of Univ. of W. Fla., No. 3:06cv442-RS-MD, 2007 WL 1490714, at *3 (N.D. Fla. May 21, 2007)("consistent with the weight of authority, that the 'precisely drawn, detailed enforcement structure' and 'comprehensive remedial scheme' that is Title VII preempts the more general remedy under Title IX in this case."); Hankinson v. Thomas County Sch. Dist., No. 6:04-cv-71, 2005 U.S. Dist. LEXIS 25576, at *6 (M.D. Ga. Oct. 28, 2005)("[T]his Court agrees with those courts that hold Title VII preempts employment discrimination claims for money damages brought under Title IX."); contra Ivan v. Kent State Univ., No. 94-4090, 1996 U.S. App. LEXIS 22269, at *7 n.10 (6th Cir. July 26, 1996)("[T]he court overrules the conclusion reached by the district court . . . that Title VII preempts an individual's private remedy under Title IX."); Preston v. Commonwealth of Va., 31 F.3d 203, 205-06 (4th Cir. 1994)("An

11

implied private right of action exists for enforcement of Title IX. This implied right extends to employment discrimination on the basis of gender by educational institutions receiving federal funds.")(citations omitted); AB v. Rhinebeck Cent. Sch. Dist., 224 F.R.D. 144, 153 (S.D.N.Y. 2004)("[T]his Court finds that Title IX was intended by Congress to function as an additional safeguard against gender-based discrimination in the context of federally funded education programs; notwithstanding the possibility of other available remedies, including without limitation those available under Title VII.").

Torres's claims in question are comparable to those presented by the plaintiff in the Lakoski case. There, a professor asserted that she was denied tenure and terminated based on her gender. 66 F.3d at 752. As in this case, "Lakoski did not file a charge with the Equal Employment Opportunity Commission, nor did she plead that the University violated Title VII of the Civil Rights Act of 1964." Id. at 753. In Lakoski, a jury awarded the plaintiff damages for violation of Title IX, and the Fifth Circuit reversed. The Fifth Circuit explained that although "Lakoski possessed a colorable claim of employment discrimination in violation of Title VII, she chose not to pursue the remedy made available by Title VII. Title VII provides an administrative procedure

12

in which an aggrieved individual must first pursue administrative remedies before seeking judicial relief." Id. at 753.

The Fifth Circuit further indicated that Congress did not "intend[] that Title IX offer a bypass of the remedial process of Title VII." Id. The court explained that allowing "an implied private right of action for damages under Title IX for employment discrimination . . . would disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers," including educational institutions. Id. at 754. Indicating its "unwilling[ness] to do such violence to the congressionally mandated procedures of Title VII," the Fifth Circuit held: "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." Id. at 753. The same result is appropriate here. If the Court were to hold otherwise, it would "eviscerate Title VII's technical and administrative requirements, thereby giving plaintiffs who work at federally funded institutions unfettered ability to bring what are in reality Title VII sexual discrimination claims without adhering to the same rules required of every other employment discrimination plaintiff in the country." Gibson v. Hickman, 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998).

The Court's analysis in <u>Great American Federal Savings and Loan Association v. Novotny</u>, 442 U.S. 366 (1979), which addressed the interplay between Title VII and 42 U.S.C. § 1985, is also illustrative. There, the Court explained, "If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of the[] detailed and specific provisions of the law . . . [including] [t]he short and precise time limitations of Title VII [and] the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." <u>Id.</u> at 375-76.

Here, using the same rationale as the Supreme Court employed in <u>Great American</u>, the Court holds that Title VII preempts Torres's Title IX claims to the extent that Torres seeks redress for retaliation based on her reports of being sexually harassed. As voiced by the court in <u>Tompkins v. Barker</u>, No. 2:10-cv-1015, 2011 U.S. Dist. LEXIS 90788, at *19 (M.D. Ala. July 13, 2011), "The undersigned can conceive of no reason why Congress would intend that a plaintiff-employee of a federally funded education institution be allowed to circumvent the unique legal and administrative requirements imposed on employees asserting identical employment discrimination claims under Title VII merely because the

14

plaintiff is employed by a federally funded education institution." Thus, the Court grants the Motion to Dismiss.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**

Defendant School District of Manatee County, Florida's Motion to Dismiss Count I and Count III of the Plaintiff's Amended Complaint (Doc. # 24) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 22nd day of August, 2014.

<em>[signature]</em><br>
VIRGINIA M. HERNANDEZ COVINGTON<br>
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record